SILVERMAN, Circuit Judge,
with whom THOMAS and CLIFTON, Circuit Judges, join,
concurring:
I agree with Judge Kleinfeld that the plaintiffs have standing to sue, and therefore join Parts I and II of his opinion. However, we part company when it comes to the merits of the plaintiffs’ claims. In my opinion, the district court correctly dismissed the plaintiffs’ lawsuit because duly-elected government officials have the right to speak out in their official capacities on matters of secular concern to their constituents, even if their statements offend the religious feelings of some of their other constituents. The key here is that the resolution in question had a primarily secular purpose and effect and addressed a matter of indisputably civic concern.
Government speech or conduct violates the Establishment Clause’s neutrality-only requirement when it: (1) has a predominantly religious purpose; (2) has a principal or primary effect of advancing or inhibiting religion; or (3) fosters excessive entanglement with religion. Lemon v. Kurtzman, 403 U.S. 602, 612, 91 S.Ct. 2105, 29 L.Ed.2d 745 (1971). We have previously applied the tripartite Lemon test to governmental expressions of alleged religious hostility. See Am. Family Ass’n v. City & County of S.F., 277 F.3d 1114, 1121 (9th Cir.2002); see also Vernon v. City of L.A., 27 F.3d 1385, 1396 (9th Cir.1994). The resolution in this case satisfies each of Lemon’s three prongs.
There is no denying that marriage and adoption are secular issues regulated by state law, even though they can (but do not necessarily) involve religious ceremonies and traditions. The same-sex marriage debate surely has religious significance to many, but it is also a hot-button political issue of considerable secular interest to the defendants’ constituents at large. The defendants passed their March 2006 resolution in direct response and contemporaneous to Cardinal Levada’s March 2006 directive. The title of the resolution refers explicitly to Cardinal Levada’s directive to local Catholic charities to “stop placing children in need of adoption in homosexual households.” Its stated purpose is to “urge[ ] Cardinal William Levada ... to withdraw [tjhis ... directive.” The reasons given are purely secular, not theological. For example, the resolution contains nothing like, “The Church has misread the Bible,” or “Our God approves of same-sex marriage.”
I agree with the district court that under Lemon’s first prong (the purpose prong), an “objective observer” who is “presumed to be familiar with the history of the government’s actions and competent to learn what history has to show” would conclude that the defendants acted with a predominantly secular purpose, i.e., to promote equal rights for same-sex couples in adoption and to place the greatest number of children possible with qualified families. Moreover, San Francisco has a well-known and lengthy history of promoting gay rights. See Catholic League v. City & County of S.F., 464 F.Supp.2d 938, 946 & n. 1 (taking judicial notice of other San Francisco resolutions promoting the rights of same-sex couples). A reasonable observer would consider the resolution in the context of both this history and the Catholic Church’s unabashed efforts to frustrate same-sex adoption in San Francisco, the *1061 defendants’ political bailiwick. In light of this context, such an observer would conclude that the primary purpose behind the resolution was secular — to promote same-sex adoption.
Under Lemon’s second prong (the effect prong), an objectively reasonable observer familiar with the history of the government practice at issue here would conclude that the primary effect of the resolution was to promote same-sex adoption. See Am. Family, 277 F.3d at 1122. Read as a whole, see id,., the resolution’s primary message is that “same-sex couples are just as qualified to be parents as are heterosexual couples” and that placing children in homosexual households does not do violence to them. An objectively reasonable observer would conclude, as they would in the context of the purpose prong, that both San Francisco’s history of promoting gay rights and the timing of the defendants’ resolution, incendiary though it may be, is aimed at expressing the defendants’ position on the secular issue of same-sex adoption.
Finally, under Lemon’s third prong (the entanglement prong), this resolution does not excessively entangle the defendants with religion. It was an isolated, non-binding expression of the Board of Supervisors’ opinion on a secular matter, which the plaintiffs have not alleged even potentially interfered with the inner workings of the Catholic Church. This type of one-off entreaty does not violate Lemon’s third prong; “[a]dministrative entanglement typically involves comprehensive, discriminating, and continuing surveillance of religion.” Vernon, 27 F.3d at 1399. To like effect is Nurre v. Whitehead, 580 F.3d 1087 (9th Cir.2009), holding that a school district’s single request that a student not play “Ave Maria” at graduation, because of multiple complaints about religious music, did not constitute excessive entanglement with religion.
In American Family, we concluded that the Board of Supervisors did not violate the Establishment Clause by passing resolutions similar to those at issue here. The resolutions in American Family criticized a religious political coalition for its moral position on homosexuality, assailed the scientific and sociological bases for the coalition’s position, and urged secular television stations not to support the coalition’s message of intolerance. See Am. Family, 277 F.3d at 1119-20. One of the coalition’s ads, placed in the San Francisco Chronicle, proclaimed that “God abhors any form of sexual sin,” including homosexuality. Id. at 1119. The Board passed the resolutions in response to that ad, and others. Id. at 1119-20.
The plaintiffs would have us distinguish the resolution in this case from the one in American Family on the grounds that the Board directed this resolution toward a religious entity rather than a political one. But the mere fact that a resolution calls out a church or a clergyman cannot carry the day. Otherwise, the Establishment Clause would gag secular officials from responding to religious entities even when those entities have chosen to enter the secular fray.
We would have a different case on our hands had the defendants called upon Cardinal Levada to recant his views on transubstantiation, or had urged Orthodox Jews to abandon the laws of kashrut, or Mormons their taboo of alcohol. Those matters of religious dogma are not within the secular arena in the way that same-sex marriage and adoption are. The speech here concerns a controversial public issue that affects the civic lives of the citizens of San Francisco, religious and nonreligious alike. I would not construe the First Amendment to prohibit elected officials from speaking out, in their official capacities, on matters of such clearly civil im *1062 port, even if their speech is insolent, stupid, or worse. A church has every right to take a firm moral position on secular issues, but it has no right to prevent public officials from criticizing its position on those secular issues — especially when one of its clergy fires the first salvo.
I would affirm.